

# THE ATTORNEY GENERAL
## OF TEXAS

AUSTIN 11, TEXAS

GROVER SELLERS
XXXXXXXXXXSON
ATTORNEY GENERAL

Honorable Homer Garrison, Jr., Director
Texas Department of Public Safety
Camp Mabry
Austin 9, Texas

Dear Mr. Garrison:   Opinion No. O-7190

         Re: What comprises the boundary
            of the States of Louisiana
            and Texas relative to the
            Sabine River.

   We are in receipt of your letter of recent date requesting our opinion on the above captioned matter, which reads as follows:

   "We have been requested by Captain H. B. Purvis of the Texas Rangers, stationed in Houston, to obtain from you an opinion determining the boundary of the State of Louisiana in relation to the Sabine River.

   "It is Captain Purvis's understanding that the State of Louisiana has jurisdiction to the west bank of the Sabine River through a treaty agreement between the two states.

   "Any information that you might be able to give us on this subject would be greatly appreciated."

   In order to properly determine the boundary between the two states involved, it is necessary for us to give a short summary of the history of both states.

   The original territory of Louisiana was acquired from France in 1803. A portion of this territory comprising part of the present State of Louisiana and the area south of latitude 31⁰ eastward to the Perdido, claimed by the United States as part of the Louisiana purchase, was organized into a territory under the name of Orleans, and the rest of the Louisiana purchase was named the District of Louisiana (2 Stat. L. 283). This name was changed to the Territory of Louisiana by act of March 3, 1805, 2d Stat. L. 331 and by act of congress of April 8, 1812, (2Stat. L. 702), effective April 30, the territory of Orleans, except the area north and east of Lake Pontchartrain,

which was added by a later act, was admitted as a State under the name of Louisiana and by the act of June 4, 1812 the name of the territory of Louisiana was changed to Missouri territory.  In the same year the limits of the state were enlarged on the southeast to their present extent, 2d Stat. L. 708. The United States claim to the area between the Sabine and Mississippi was not recognized by Spain until 1819 (see treaty between the United States and Spain, 1819).

The act approved March 26, 1804 (2d Stat. L. 283) defines the territory of Orleans as:

"Beginning at the mouth of the river Sabine; thence by a line to be drawn along the middle of said river, including all islands, to the thirty-second degree of latitude; thence due north, to the northernmost part of the thirty-third degree of north latitude; thence along the said parallel of latitude to the river Mississippi; thence down the said river to the river Iberville, and from thence along the middle of the said river and lakes Maurepas and Pontchartrain to the Gulf of Mexico; thence, bounded by the said gulf, to the place of beginning, including all islands within three leagues of the coast." (Emphasis added).

The land enclosed in the above field notes to the territory of Orleans, was admitted as a State under the name of Louisiana.

Texas declared its independence of Mexico in 1835.  In 1836 the   Congress of the Republic of Texas defined the boundary as extending south and west to the Rio Grande and northward from the source of that river to the 42nd parallel, the eastern and northern limits coinciding with the western boundary of the United States as laid down in the treaty with Spain in 1819. This area comprised all of the former Mexican states of Coahuila and Texas.  The boundary as fixed by the treaty of 1819 was reaffirmed by treaty with Mexico concluded January 12, 1828, Mexico having in the meantime gained its independence from Spain.  This treaty with Spain became effective February 22, 1821 by presidential proclamation.  These boundaries were formally recognized by the United States, Act of September 9, 1850.  9 Stat. L. 447.  See Spillman, W. J., Adjustments of the Texas Boundary of 1850; Texas Historical Association Quarterly, October 1902 and January 1904.

The Eastern boundary of the Republic of Texas, which followed the west bank of the Sabine river, was surveyed in 1840 by a joint commission representing the United States and Texas.  From the Gulf to Logans Ferry, the observed latitude

of which was found to be 31° 58' 24" and the longitude 94° 00'
02.4".  the initial mark of this survey was a mound of earth
50 ft. in diameter about 7 ft. high on the shore of the gulf,
the position of which was reported as latitude 29° 41' 27.5"
longitude 93° 50' 14.2".  See Marshall, T. M. a History of the
Western Boundary of the Louisiana Purchase, Chap. 12, Berkeley,
Univ. Calif. press, 1914.

On December 29, 1845, Texas was admitted as a State. 9
Stat. L. 108.  In 1848 the Eastern boundary of the State was
extended, as noted in the following extract:  (9 Stat. L. 245).

"That this Congress consents that the Legislature of
the State of Texas may extend her eastern boundary so as
to include within her limits one-half of Sabine Pass, one-
half of Sabine Lake, also one-half of Sabine River, from
its mouth as far north as the thirty-second degree of
north latitude."

By an act of the Legislature of the State of Texas, ap-
proved November 24, 1849, the Eastern boundary of Texas was
fixed in the following language:

"Be it enacted by the Legislature of the State of
Texas, that in accordance with the consent of the Congress
of the United States, given by an act of said Congress,
approved July 5th, 1848, the Eastern Boundary of the State
of Texas be, and the same is hereby extended so as to in-
clude within the limits of the State of Texas, the western
half of Sabine Pass, Sabine Lake and Sabine River from its
mouth as far north as the thirty-second degree of north
latitude; and that the several counties of this State,
bounded by said Sabine Pass, Sabine Lake and Sabine River
from its mouth as far north as the thirty-second degree of
north latitude, shall have and exercise jurisdiction over
such portions of the western half of said Pass, Lake and
River as are opposite to said counties respectively;"

The United States entered into a treaty with Spain on
February 22, 1819.  The third article in this treaty defines the
boundary between the United States and the Spanish possession
in the Southwest as follows:

"Article III.  The boundary line between the two
countries, west of the Mississippi, shall begin on Gulph
of Mexico, at the mouth of the river Sabine, in the sea,
continuing north, along the western bank of that river,
to the 32nd degree of latitude; . . . All the islands
in the Sabine, and the said Red and Arkansas Rivers,
throughout the course thus described, to belong to the

United States; but the use of the waters, and the naviga-
tion of the Sabine to the sea, and of the said rivers
Roxo and Arkansas, throughout the extent of the said
boundary, on their respective banks, shall be common to
the respective inhabitants of both nations."

Thus it is seen that in 1819 the western half of the
Sabine River constituted United States Territory.

The following rules as to how boundaries between countries
and states are established and changed seem to be universally
recognized:

1. Boundaries between countries are established by
treaties made between the sovereign powers concerned. See
Brigham, A.P., Principles in the Determination of Boundaries:
Geog. Rev., Vol VII p. 201-219, 1919.

2. Boundaries between two States of the United States
may be changed by agreement of the State legislatures, but
this agreement must be approved by Congress. The United
States Congress can not change a State boundary without
the consent of the State, nor can two States by mutual
agreement change their common boundaries without the con-
sent of Congress. U.S. Sup. Ct. Reports, II Wallace, pages
39-59 (78 U.S. 39-59; 148 U.S. 502).

3. A boundary between a State and a Territory is
fixed by joint action of Congress and the State. Boundaries
between Territories are fixed by congressional action alone.
148 U.S. 503.

4. If a boundary line described as following the
middle of the river intersects an island, it is the usual
policy to give the entire island to the State or Govern-
ment to which the greater part would fall. 206 U.S. 46;
259 U.S. 419.

5. Where running streams are the boundaries between
States, when the bed and channel are changed by the natural
and gradual processes known as erosion and accretion, the
boundary follows the varying course of the stream (See 265
U.S. 499); while if the stream from any cause, natural or
artificial, suddenly leaves its old bed and forms a new
one, by the process known as avulsion, the resulting change
of channel works no change of boundary, which remains in
the middle of the old channel (or on one bank as so fixed
by statute) although no water may be flowing in it. (See
246 U.S. 173).

By applying the above rules of law, to the facts as above set forth, it is our opinion that the western boundary of Louisiana, insofar as it relates to the Sabine River, is the middle of said river as it existed in 1804, subject to whatever changes that may have occurred by reason of erosion and accretion, and that the eastern boundary of Texas, insofar as it relates to the Sabine River, is the middle of said river as it existed in 1821, subject to whatever changes that may have occurred by reason of erosion and accretion.

In the absence of proof to the contrary, it would be presumed that the river's location in 1804, in 1946 and in all intervening years was in the same place. Hence, until otherwise shown, the middle of said River as it now exists constitutes the common boundary line between said States.

In all statements in which the Sabine River is mentioned, such reference is limited to that portion of said river between its mouth and the thirty-second degree of latitude.

                              Yours very truly

                         ATTORNEY GENERAL OF TEXAS


                         By W.V. Geppert /s/
                            W. V. Geppert
                            Assistant

WVG:ms:wc

APPROVED MAY 9, 1946
s/Carlos C. Ashley
FIRST ASSISTANT
ATTORNEY GENERAL

This Opinion Considered And Approved In Limited Conference